IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-127-GMS |
| | ) | |
| TURNER BROADCASTING SYSTEM, | ) | |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TURNER BROADCASTING SYSTEM, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO TRANSFER TO THE WESTERN DISTRICT OF WASHINGTON**

                    John W. Shaw (No. 3362)
                    Karen E. Keller (No. 4489)
                    YOUNG CONWAY STARGATT & TAYLOR, LLP
                    The Brandywine Building
                    1000 N West Street, 17th Floor
                    Wilmington, Delaware 19801
                    (302) 571-6600
                    jshaw@ycst.com

OF COUNSEL:

J. Christopher Carraway
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
(503) 595-5300

Dated: June 5, 2008

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BECAUSE NOT A SINGLE UNIQUE CONNECTION EXISTS BETWEEN
THIS CASE AND DELAWARE WHILE MANY SUCH CONNECTIONS
TO THE WESTERN DISTRICT OF WASHINGTON EXIST, THE BALANCE
OF CONVENIENCE POINTS ENTIRELY TO TRANSFER ............................................ 2

   A. The Western District's Extensive Past And Continuing Experience
      With The Asserted Patent Makes It A Much More Efficient Venue For This Case ....... 2

      1. The Western District Is Already Very Familiar With The '124 Patent .................. 2

      2. The Western District Also Will Likely Hear
         The TGN v. CRS Case Involving The '124 Patent
         And The Same GameTap Website Accused In This Case ...................................... 4

      3. The Relative Speed Of Dockets Favors Transfer To Washington .......................... 5

   B. Litigating In Washington Will Likely Be Less Expensive For Both
      Parties, As Neither Party Has Any Specific Connection To Delaware .......................... 5

      1. CRS Is A Washington Company Located In Seattle ............................................... 5

      2. TBS Is A Georgia Corporation With No Particular Ties To Delaware .................. 5

      3. Litigating In Washington Eliminates Local Counsel Expenses .............................. 6

   C. Key Witnesses Have No Connection To Delaware ......................................................... 6

      1. Key Non-Party Fact Witnesses Are Located In Washington ................................. 6

      2. Even If Their Location Were A Relevant Factor,
         None Of The Parties' Own Witnesses Are In Delaware ........................................ 8

   D. CRS, Confusing Initial Deference To Its Choice Of Forum With The Issue-
      Determinative Balance-Of-Convenience Analysis, Has Not Offered Any
      Competing Convenience Consideration To "Balance"..................................................... 8

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Affymetrix v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998) ............................................................. 3, 6, 7, 8, 9

*Automotive Techs. Int'l, Inc. v. American Honda Motor Co., Inc.*,
  No. 06-cv-187-GMS, 2006 WL 3783477 (D. Del. 2006) ......................................... 9

*Bayer Bioscience N.V. v. Monsanto Co.*,
  2003 WL 1565864 (D. Del. 2003) ................................................................... 5

*Burroughs Wellcome Co. v. Giant Food, Inc.*,
  392 F. Supp. 761 (D. Del. 1975) ..................................................................... 9

*Cashedge, Inc. v. Yodlee, Inc.*,
  2006 WL 2038504 (D. Del. 2006) ................................................................... 4

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ....................................................................................... 7

*Sherwood Med. Co. v. IVAC Med. Sys., Inc.*,
  1996 WL 700261 (D. Del 1996) ..................................................................... 6

*Textron Innovations, Inc. v. The Toro Co.*,
  No. 05-cv-486-GMS, 2005 WL 2620196 (D. Del. 2005) ......................................... 9

**I.      INTRODUCTION**

When deciding a motion to transfer, the Court must balance the conveniences to the parties and the judicial system of having the case in the current district versus the proposed district.  Here, however, there is actually nothing to balance, because Plaintiff CRS has identified no unique connections between this case and Delaware.  Not a single witness.  Not a single party.  Not a single office or employee of a party.  Not a single prior lawsuit involving the asserted '124 patent.  No documents.  No unique connection to the facts of the case whatsoever.

In fact, the only relationship of this case to Delaware is that—after CRS and its predecessor litigated eight consecutive infringement lawsuits in the Western District of Washington (including a number against Delaware corporations)—CRS somewhat inexplicably chose to file this, its ninth case, in Delaware.  It did so only after a *Markman* decision and summary judgment were rendered in the Western District against CRS.  While a plaintiff's choice of forum is an important factor to consider, it must give way when there is nothing else supporting the case remaining in the chosen forum, while a myriad of conveniences support transfer.  This is just such a case where there are many reasons why this case should be in Seattle, and no other reason for the case to be in Delaware other than CRS's choice:

| District of Delaware | Western District of Washington |
|---|---|
| • Plaintiff's Choice | • Eight Prior and Two Pending Lawsuits Regarding the '124 Patent Family<br>• Markman and Summary Judgment Decisions on the '124 Patent<br>• Plaintiff's Home, Offices, and Officers<br>• Plaintiff's Lead Counsel<br>• Defendant's Lead Counsel<br>• Subpoena Power Over Key Non-Party Witnesses, Including Inventors<br>• Location of Development and Commercialization of the '124 Patent |

Of these numerous reasons for the case being in Seattle, a few are particularly important:

*Judicial Efficiency*:  Judges in the Western District are already very familiar with the asserted '124 patent and its parent by virtue of the eight prior cases filed there by CRS and its predecessor, including cases that resulted in decisions on claim construction and on motions for summary judgment, to dismiss, and to stay.  Judges in Seattle are currently presiding over two cases regarding the '124 patent, including one filed by CRS in which the parties have proposed a September 2009 trial date, and a second filed by TBS subsidiary TGN, Inc. seeking a declaration of non-infringement regarding the same GameTap website accused by CRS in this lawsuit.

*Convenience of the Parties*:  TBS is seeking transfer to Plaintiff's own home town, where Plaintiff and its lead litigation counsel all reside.  In fact, because neither party would need local counsel in Seattle, litigating there would likely be less expensive for CRS and TBS.

*Location of Witnesses*:  Key third-party witnesses with important knowledge for this case, including all three named inventors and others, reside in the Seattle area, but cannot be compelled to appear for trial in Delaware.

II.  **BECAUSE NOT A SINGLE UNIQUE CONNECTION EXISTS BETWEEN THIS CASE AND DELAWARE WHILE MANY SUCH CONNECTIONS TO THE WESTERN DISTRICT OF WASHINGTON EXIST, THE BALANCE OF CONVENIENCE POINTS ENTIRELY TO TRANSFER**

   A.  **The Western District's Extensive Past And Continuing Experience With The Asserted Patent Makes It A Much More Efficient Venue For This Case**

   *1.  The Western District Is Already Very Familiar With The '124 Patent*

The large number of cases (eight) that CRS and its predecessor-in-interest have filed in Seattle regarding the '124 family of patents has given the majority of the judges on the Western District of Washington's Seattle bench familiarity and experience with the patents.  Judge Pechman construed the '124 patent claims and granted summary judgment in one of the cases.  *See* Case No. 2:01-cv-01991, Dkt. 45, 76.  Judge Lasnik has heard four of the cases (Case Nos.

- 2 -

2:01-cv-00437, 2:01-cv-01540, 2:01-cv-01790, and 2:02-cv-00191), including one requiring him to decide a summary judgment motion (*see* Case No. 2:01-cv-01540, Dkt. 42), and another requiring him to decide motions to dismiss and stay (*see* Case No. 2:01-cv-00437, Dkt. 30 and 51). Judge Coughenour has likewise had two cases before him involving these patents (Case Nos. 2:01-cv-01311 and 2:01-cv-01504), and Judge Zilly one case (Case No. 2:01-cv-00878).

Furthermore, the lawsuit that CRS filed against Valve in Washington on the same day it filed this lawsuit against TBS is assigned to Judge Jones. Case No. 2:08-cv-00361. In that case, CRS and Valve have already submitted a Joint Status Report and have jointly proposed a trial date of October 2009. *Id.*, Dkt. 15. Regardless of whether this case is transferred or not, Judge Jones will be required to invest the time and effort necessary to rule on the '124 patent.

In an effort to discount the long and extensive experience of the Western District with its '124 patent, CRS offers empty speculation that one of the judges there, Judge Pechman, may not in fact recall anything about the '124 patent (Dkt. No. 16 at 15), despite the fact that she had before her the longest-running lawsuit involving that patent, construed ten terms from the patent, and granted summary judgment of non-infringement. If the Court were to accept CRS's unfounded speculation as a legitimate argument, then a district's prior experience with a patent could never be a factor in transfer, which certainly is not the law. *See Affymetrix v. Synteni, Inc.*, 28 F. Supp. 2d 192, 206 (D. Del. 1998). Here, CRS and its predecessor have litigated eight prior lawsuits involving the '124 patent family in Seattle, but now, it has chosen to bring a first lawsuit elsewhere. The prior experience of the Western District, which includes orders construing the claims as well as orders on motions to dismiss and decisions on several different summary judgment motions, simply cannot be dismissed based on CRS's speculation that busy courts are not likely to remember what they have done. Judicial efficiency, reflected both in knowledge of

the technology, and the benefits of possible consolidation of similar cases, strongly supports transfer. *See, e.g., id.*; *Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504 at *2 (D. Del. 2006).

Whomever this case ends up with upon the requested transfer to Seattle will almost certainly have some past or present experience with these patents given how often CRS and its predecessors have filed infringement lawsuits in that district over the past seven years.[1]

### 2. The Western District Also Will Likely Hear The TGN v. CRS Case Involving The '124 Patent And The Same GameTap Website Accused In This Case

As a result of the declaratory judgment action filed by TBS subsidiary TGN against CRS in Seattle, the Western District will also likely be hearing a case involving most of the same issues and witnesses. Dkt. No. 10 at 9. At present, the TGN case is assigned to Judge Pechman, who construed the '124 patent claims in one of CRS's previous eight lawsuits. The lawsuit was filed by TGN because TGN—not TBS—is the correct entity that develops and operates the accused GameTap website. *Id.* at 4; Dkt. No. 12 at ¶¶ 2-3.

CRS claims that the Court should disregard the significant judicial and party efficiencies in having the heavily overlapping TBS and TGN cases litigated together in the Western District based on its speculation (but again, without providing supporting facts), that TBS and TGN are allegedly "alter egos" such that its suit was proper against TBS. However, CRS's new "alter ego" theory is both wrong and unsupported. For example, (a) TGN is a separate and distinct corporate entity from TBS; (b) TGN maintains separate financial records for the business activities conducted by TGN; (c) revenues generated by the GameTap website are attributed directly to TGN; (d) costs incurred by the GameTap website are paid by or allocated to TGN;

---

[1] CRS mentions another suit it just filed in Delaware as support for keeping the present suit here. *See* Dkt. No. 16 at 4. It is speculative where that other Delaware suit will ultimately be litigated, however, as the defendant, a California corporation, has just sought an extension of time to answer to July 7, 2008.

and (e) TGN has its own employees, who work on developing and operating the GameTap website, and their salaries are paid for by TGN. Declaration of Stephen Pyburn, ¶¶ 2-3. In any event, the fact that the Western District will likely hear this nearly identical lawsuit merely highlights further efficiencies associated with transfer. *See Bayer Bioscience N.V. v. Monsanto Co.,* 2003 WL 1565864, at *2 (D. Del. 2003).[2]

### 3. *The Relative Speed Of Dockets Favors Transfer To Washington*

CRS has filed in a jurisdiction which, relative to its "home turf" has a heavier docket, and with a vacancy on its bench has a slower time to trial. *See* Dkt. No. 10 at 21-22. Thus, relative speed of docket is an additional factor favoring transfer.

**B.    Litigating In Washington Will Likely Be Less Expensive For Both Parties, As Neither Party Has Any Specific Connection To Delaware**

### 1. *CRS Is A Washington Company Located In Seattle*

CRS is a Washington corporation, with its offices and owners (one of whom is its lead counsel Robert Rohde) all in the Western District of Washington. *See* Dkt. No. 10, Exh. C. CRS purchased the '124 patent from Network Commerce, another Washington company. *Id.,* Exh. D. Prior to bringing the present suit, all eight lawsuits related to the '124 patent family were in the Western District. *See* Dkt. No. 10 at 7-9. Thus, while CRS would have had a rational and legitimate basis to file this suit in the Western District, it lacks any similar basis in Delaware.

### 2. *TBS Is A Georgia Corporation With No Particular Ties To Delaware*

Defendant TBS, Inc. is not incorporated in Delaware, nor does it have its principal place of business, any offices, or an operational presence there. *Id.* at 4. The same is true of TGN, Inc., the TBS subsidiary that actually develops and operates the accused GameTap website. *Id.*

---

[2] CRS has just moved to dismiss or stay the TGN case pending this Court's decision on this motion to transfer.

CRS spills a lot of ink on the connections between Time Warner, Inc., TBS's ultimate parent company, and Delaware. However, as Time Warner is not a party to this suit, this discussion is an irrelevant distraction. CRS's additional argument regarding the connections of other TBS subsidiaries (*e.g.*, CNN) **not accused** in this case is similarly misguided. In sum, CRS has not identified a single TBS or TGN office, employee, or business that is at issue in this case as having ties to Delaware.[3]

### 3. *Litigating In Washington Eliminates Local Counsel Expenses*

By filing suit in Delaware, CRS forced both parties to retain local counsel. CRS's lead counsel for this matter is Robert Rohde of Rohde & Van Kampen, located in Seattle. Likewise, TBS's lead counsel in this case and the related *TGN v. CRS* declaratory judgment action in Seattle is Klarquist Sparkman, LLP, with offices in Seattle and Portland, Oregon.[4] Thus, transferring the case to Seattle would eliminate the expense of local counsel for all parties. This further favors transfer. *See Affymetrix*, 28 F. Supp. 2d at 205-06.

### C. **Key Witnesses Have No Connection To Delaware**

### 1. *Key Non-Party Fact Witnesses Are Located In Washington*

Non-party fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit traditionally weigh heavily in the "balance of convenience" analysis (*id.* at 203), and "mere assurance that [] individuals will 'appear at trial is not the same thing as having them

---

[3] While CRS argues that the accused GameTap website is available throughout the world, including Delaware (Dkt. No. 16 at 5), this motion to transfer is not based on a challenge to personal jurisdiction, so whether the accused website is available in Delaware is not at issue and, given that the website is available essentially everywhere, certainly provides no unique connection of this case to Delaware. *See Affymetrix*, 28 F. Supp. 2d at 207-08.

[4] The lead lawyer from Klarquist Sparkman on this case and the *TGN v. CRS* declaratory judgment action is J. Christopher Carraway, who is licensed in Washington and is a member of the bar of the Western District of Washington. *See* Case No. 2:08-cv-08-00680 (W.D. Wash.), Dkt. 4. In addition, attorney Adam Wichman of the firm's Seattle office has appeared on behalf of TGN in the *TGN v. CRS* action. *See id.*, Dkt. 6.

amenable to the subpoena power of the trial court.'" *Id.* at 205, *quoting Sherwood Med. Co. v. IVAC Med. Sys., Inc.*, 1996 WL 700261, at *5 (D. Del 1996).

Here, it is undisputed that virtually all of the key identified non-party witnesses are in the Seattle, Washington area, and thus within the subpoena power of the Western District. This includes all three alleged inventors of the patent at issue, as well as the former president of CRS's predecessor-in-interest. *See* Dkt. No. 10 at 14-15. Each of these witnesses is expected to have specific information relevant to the validity of the patent, and has been previously identified in earlier cases by CRS or its predecessor-in-interest as either "persons most knowledgeable" or a "key witness." *Id.* In contrast, CRS has not pointed to a single witness with relevant knowledge who resides in this district and is subject to the subpoena power of this Court.

CRS has attempted to rebut the inconvenience of the Delaware forum by stating that it intends to call the three alleged inventors at trial, and has submitted declarations from them stating that they are willing to travel to Delaware to testify "[i]f required to do so." *See* Dkt. No. 16 at 9-10. That misses the point. In Delaware, neither the Court nor TBS has any ability to **require** these Washington witnesses to appear.

While it is possible that the purported inventors would appear voluntarily if called by CRS, this does not address TBS's right to call them adversely, a right that is not protected by their present statements that they are "not adverse to voluntarily appearing" (purportedly on behalf of CRS), or by CRS's statement that it "intends" to call them. For reasons previously explained, these witnesses may be critical for TBS's invalidity case, and TBS must have the ability to compel them to attend, even if to provide testimony against their or CRS's interest. *Gulf Oil Corp. v. Gilbert*, 330 U.S.501, 511 (1947); *Affymetrix,* 28 F. Supp. 2d at 205.

Furthermore, CRS has not disputed that Dwayne Walker, the former president of CRS's

- 7 -

predecessor-in-interest Network Commerce, which commercialized the asserted patent's technology, resides in the Seattle area and cannot be compelled to appear in Delaware. His testimony will be important to the issue of commercial success (or lack thereof) of the patented technology. *See* Dkt. No. 10 at 14-15. He has not expressed a willingness to attend in Delaware, whether voluntarily or otherwise. *See id.*

Because the key non-party witnesses are not within the subpoena power of this Court, but would be within the Western District's subpoena power, this factor strongly supports transfer.[5]

### 2. Even If Their Location Were A Relevant Factor, None Of The Parties' Own Witnesses Are In Delaware

CRS points out that a number of witnesses for Defendant TBS may be in Georgia, rather than Washington. *See* Dkt. No. 16 at 10.[6] The location of party witnesses carries slight weight in the analysis of convenience, because under the *Affymetrix* analysis, "each party is able, indeed obligated, to procure the attendance of its own employees for trial." *Id.* at 203. Even if the location of party witnesses were a consideration, none of these party witnesses is in Delaware.

### D. CRS, Confusing Initial Deference To Its Choice Of Forum With The Issue-Determinative Balance-Of-Convenience Analysis, Has Not Offered Any Competing Convenience Consideration To "Balance"

CRS has pointed to no unique connection of this case to Delaware for the Court to balance against the many conveniences of Washington: no prior judicial experience with this

---

[5] CRS disagrees with TBS's statement that the '124 Patent was "developed" in Seattle, citing a declaration from one of its inventors that his work was "pioneered" in Florida. Dkt. No. 16 at 2. In fact, in 1997, the year the '124 patent application was filed, development and commercialization was clearly occurring in Seattle. *See* http://findarticles.com/p/articles/mi_m0EIN/is_1997_Sept_25/ai_19781851. In any event, this dispute is less important than the fact that all three named inventors and other identified key witnesses continue to reside in the Seattle area.

[6] As an initial matter, the Court is not asked to balance whether there would be some alternative forum (such as Georgia) which might be even more convenient to the parties than the one to which transfer is requested, but rather, whether the forum to which transfer is requested is more convenient than the present forum.

- 8 -

patent by Delaware courts, no Delaware parties, no Delaware offices or employees of parties, no Delaware witnesses, and no Delaware documents.  In sum, other than its unexplained decision to file in Delaware, CRS has pointed to nothing whatsoever to balance against all of the above factors that point squarely to transfer.  Given that nothing supports this case being in Delaware other than its choice to file here, CRS essentially asks the Court to find that a plaintiff's choice of forum is enough when every other factor points to a different venue.  CRS is wrong.

The law is clear that a plaintiff that sues in a forum that is not its "home turf," while providing no "rational and legitimate" reason for doing so, faces a difficult battle in defeating a motion to transfer for inconvenience:

> Under the balancing test inherent in any transfer analysis, the weaker the connection between the forum and either the plaintiff or the lawsuit, the greater the ability of the defendant to show sufficient inconvenience to warrant transfer.

*Id.* at 199; *see also Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975) (same).  CRS offers no "rational and legitimate" basis for its choice of Delaware.  As a result, CRS stands in a far weaker position when the Court weighs the "balance of convenience" against its initial deference to the plaintiff's chosen forum.  *Affymetrix,* 28 F. Supp. 2d  at 200.

Instead of providing a single unique Delaware connection of this case to justify its choice, anything that might be balanced against all the connections to Seattle, CRS quibbles with the wording in TBS's brief that a plaintiff's choice of a forum away from its home turf is accorded less deference.  Dkt. No 16 at 7.  In fact, this Court has described CRS's current predicament in several similar ways, including that the plaintiff's choice of a forum away from its home turf is indeed accorded "less deference,"[7] or that such deference may not change but is

---

[7] *See, e.g., Automotive Techs. Int'l, Inc. v. American Honda Motor Co., Inc.*, No. 06-cv-187-GMS, 2006 WL 3783477, *2 (D. Del. 2006) ("As an initial matter, the court notes that it will

- 9 -

more easily overcome by the overall balance of convenience.[8]  Whatever the tag put on the analysis in these cases, though, the result is the same:  defendants such as TBS are more likely to succeed in showing the inconvenience necessary to justify transfer when, as here a plaintiff chooses a district that has no rational connection to the parties or this lawsuit.  *Id.* at 199.

### III.  **CONCLUSION**

The Western District of Washington is more convenient to the witnesses and the parties, and provides a more efficient forum to try this case, based on that Court's eight prior and two pending lawsuits involving the '124 patent family, including one pending declaratory judgment involving the same accused website as this case.  For these reasons, and because CRS has still offered no rational and legitimate reasons for filing in the District of Delaware and no unique connections between Delaware and this case, the "balance of convenience" analysis strongly supports TBS's motion for transfer of this case to the Western District of Washington.

|  |  |
|---|---|
|  | YOUNG CONWAY STARGATT <br> & TAYLOR, LLP |
|  | /s/ John W. Shaw <br> John W. Shaw (No. 3362) <br> Karen E. Keller (No. 4489) |
| OF COUNSEL: | 1000 West Street, 17th Floor |
| J. Christopher Carraway | Wilmington, Delaware  19801 |
| KLARQUIST SPARKMAN, LLP | 302 571-6600 |
| One World Trade Center | jshaw@ycst.com |
| 121 S.W. Salmon Street, Suite 1600 |  |
| Portland, Oregon  97204 | *Attorneys for Defendant Turner Broadcasting* |
| (503) 595-5300 | *System, Inc.* |

Dated:  June 5, 2008

---

afford less deference to ATI's choice of Delaware as a forum because it is not its 'home turf,' or principal place of business."); *Textron Innovations, Inc. v. The Toro Co.*, No. 05-cv-486-GMS, 2005 WL 2620196, *2 (D. Del. 2005).

[8] *Affymetrix,* 28 F. Supp. 2d  at 199-200.

## CERTIFICATE OF SERVICE

I, John E. Shaw, Esquire, hereby certify that on June 5, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Michael G. Busenkell, Esquire
> Eckert Seamans Cherin & Mellott LLC
> 300 Delaware Avenue, Suite 1210
> Wilmington, DE 19801

I further certify that on June 5, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Robert Rohde, Esquire, Esquire [brohde@rohdelaw.com]
> Rohde & Van Kempen PLLC
> 1001 Fourth Avenue, Suite 4050
> Seattle, WA 98 154-1000

> YOUNG CONAWAY STARGATT
>   & TAYLOR, LLP
>
> */s/ John W. Shaw*
> John W. Shaw (No. 3362)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 1 9899
> (302) 571-6600
> jshaw@ycst.com